Colcock, J.
This was an action of debt on the bond of the defendants, in the penal sum of one thousand pounds, conditioned that the defendant, Oliver Cromwell, who was a clerk of the plain, tiff in the sheriff’s office, should account for all sums of money received by him for the sheriff. The plaintiff proved the bond, and a receipt from the defendant, Oliver Cromwell, to Mr. William Boyd, dated the 14th day of September, 1807, for the sum of four thou, sand five hundred and forty-eight' dollars and forty-two cents, received for the plaintiff, on an execution at the suit of Wentner v. Muir and Boyd.
For the defendants, it was stated by their counsel, that the defendant, Oliver Cromwell, had received this sum from Mr. Boyd ; that he remained in the sheriff’s office till near two o’clock, and the sheriff not appearing then, he deposited the sum of four thousand five hundred dollars in the State bank, to his credit; and retained the balance, forty-eight dollars and forty-two cents, on account of the sheriff’s fees. In support of this statement, the bank book of the plaintiff, for the State-Bank, was called for, and also a book of memoranda, called his cash book. From the first, it appeared that a sum of four thousand five hundred dollars, had, on the 14th of September, 1807, been lodged in the State Bank to the credit of the *464 plaintiff; the form of the entry, “ Cash four thousand five hundred dollars.” The cash book was also examined, and there was- no entry in it of any sum corresponding to the amount in dispute.
The counsel for defendants attempted to shew from circumstances, and with that view proposed questions to one of the witnesses, that the plaintiff was absent from town on the day of the date of the receipt. Several witnesses deposed to the honesty and integrity of MR Cromwell, which were not denied by plaintiff. Mr. Charles Cromwell was examined, and deposed, that on -the 8lh of September, 1808, which was nearly a year after the date of the receipt to Mr. Boyd, and a few days after it had been known, the money had been received by his brother, Mr. Oliver Cromwell; he obtained from Mr. Boyd a copy of the receipt, and went to the State Bank, where he found that a sum of $4,500, had been deposited on the day of the date of the receipt, to the credit of Mr. Laval; that afterwards, in several conversations with Mr. Laval, in which the witness affirmed that this was part of the money his brother had received, Mr. Laval, though he insisted he deposited the money himself, yet said the matter could be settled between Mr. Oliver Cromwell and himself, if he, the witness, did not interfere; that he knew he must pay the money, and requested that Mr. Cromwell would make a search for it in his house. Upon being told by witness, his brother’s character would sutler on the occasion, he, Laval, said he took a different view of the matter ; that he would vindicate the character of the said Oliver Cromwell; and did, himself, blame him only for having enforced the execution, when there were orders not to proceed; which appeared pretty clearly in evidence to have been the fact. That upon asking Mr. Laval, if he could shew, by receipts, how he came by that money, be said no ; that he was in the habit of receiving considerable sums without giving receipts. It was deposed that Mr. Cromwell had been a very regular man ; that he had received large sums of money for Mr. Lehre, the former sheriff, and had faithfully accounted for them ; but that since a violent fit of sickness, with which he was attacked in the autumn of 1806, he had become less methodical, and his memory considerably impaired.
On the cross-examination of Mr. Lehre, one of the defendant’s witnesses, he said Mr. Cromwell had made it a habit to take receipts for all sums of money, which he received or paid away to his use. Mr. Cleary, a clerk in the sheriff’s office, for the defend, ant, deposed, that he did not recollect having seen Mr. Laval in the office on the 14th of September, 1807; that sometimes he *465 visited bis plantation in Goose Creek; that Mr. Cromwell generally remained in the office until two o’clock, and thinks he did so on the 14th of September ; that he, himself, was occasionally called from the officethat Mr. Cromwell did not go out on account of his debilitated state. On being cross-examined, Mr. Cleary said he saw Mr. Boyd pay the money to Mr. Cromwell; that he did not see Mr. Cromwell pay it to Mr. Laval, nor did he know how he disposed of it; that Mr. Laval always kept possession, of his bank book, of which he was extremely careful, and never trusted it to the possession of any person ; that he scarcely permitte4 any one to see it; that Mr. Cromwell kept a book of receipts, and was in the habit of taking receipts for all sums he paid Mr. Laval; he was less methodical after his illness, but he deposed generally to the fixed habit of his taking receipts. That he, Mr. Laval, always deposited his own money ; and that Mr. Cromwell never had deposited any for him, to his knowledge. It never was pretended by Mr. Cromwell, that he ever had possession of Mr. Laval’s bank book, or had at any other time deposited money for Mr. Laval; but it .was assigned as a reason for his depositing at this time, that having kept it till near two o’clock, and Mr. Laval not making his appearance, he determined on loding it in the bank. Mr. Cleary was in» terrogated as to some declaration of Mr. Cromwell to that effect, in the presence of Mr. Cornice, near the hour of two; but he did not recollect any ; and witnesses were called to shew that Mr. Laval must have obtained the entry in his bank book after Mr. Cromwell had deposited it, when he probably went to bank for the purpose of making some other deposit. To this point Mr. Jeanneret, the teller, and Mr. Steedman, the book-keeper of the State Bank, were examined. It was a fact not disputed, that if the entry in the bank had been made after the deposit, it would have been made by the book-keeper, if present. The entry in Mr. Laval’s bank book, was in the handwriting of Mr. Jeanneret. These witnesses, however, for defendant deposed, that in the absence of Mr. Steedman, the book-keeper, Mr. Jeanneret, the teller, and Mr. Axson, sometimes made the entries for him. On their cross-examination, they said they had no recollection of Mr. Cromwell’s having at any time deposited money for Mr. Laval; that Mr. Laval was in the habit of depositing his own money ; that he never left his book at bank but to have it balanced ; and on the face of the book, it appeared not to have been balanced on any day near the 14th of September, 1807; that it was invariably the case, that when a bank book did not accompany a deposit, and credit was given in it afterwards, the credit *466 ja the bank book was not entered “ cash,” but it was enteréd “ de--posit;” and that the person in this instance'who deposited the '$4,500, must have had Mr. Laval’s bank book with him.
rePty t0 ’testimony> **■ was deposed on the behalf of the plaintiff, by Mr. Jackson, a deputy,sheriff, that he saw Mr. Cromwell put the money he received from Mr. Boyd, with the execution under which it was levied, into his breeches pocket. The execution, Mr. Cleary, on his cross-examination, proved has been ever since missing, notwithstanding the most diligent search in the office of the sheriff. That Mr. Cromwell has taken papers and money from the office, which he has kept a considerable time before they were returned. He mentioned an instance of his carrying away an execution with money in it, which he kept three months, strenuously denying, in the mean time, that he had ever received the money; but it afterwards was returned with the execution, the receipt for which was exhibited at the trial by his counsel. Other witnesses proved, that he- had carried away papers of the office, which have never been returned ; that he had received sums, they were small, at the trial not accounted for, and in a particular instance that he delivered to Mr. Johnson, the security of Mr. Laval, some office papers, which he said he would not deliver to Mr. Laval, on account of their quarrel. It was proved for the plaintiff, that the judgment, to satisfy which the money received from Mr. Boyd had been levied, had been taken by agreement, to remain unenforced (ill communication could be had in England with the owners óf the debt, relating to the terms of the agreement; that orders were accordingly endorsed on. the execution not to proceed ; that Mr. Cromwell delivered it to Jackson, the deputy sheriff, with orders to get the money. 'That near twelve months after the receipt by Mr. Cromwell, Mr. Boyd having met Mr. Nicholson, the attorney on the record of said judgment, and reproved him for departing from the agreement, he resorted to Mr. Laval, which produced an en-quiry into the matter, and Mr. Nicholson believed the publications in the Gazettes. William and Lewis Laval proved that Mr. Cromwell said at first that the money had been probably paid to Mr. Cleary, and asked if Mr. Laval, had taken security from him. That when his own receipt was exhibited, Mr. Cromwell was very unhappy; said he did not know what he had done with the money, but’he was sure Mr. Laval bad not received it; that he fold them, he had given his negroes notice, that they were to be sold at ven-due to pay the debt; that he appeared one day very much elated, and desired them to give him joy, as he had found the money; *467 that, thinking on tiie subject in his bed the night before, he recollected he must have put it into a secret drawer which he had, the key of which was mislaid; but that the day after, he appeared dejected, and said he had searched the drawer, and found it not there ; that these conversations were before his brother, Mr. Charles Cromwell^ had made his enquiries at the State Bank; (hat when Mr. Charles Cromwell informed him that there was a deposit of $4,500 to Mr. Laval’s credit, he said that he remembered very well that he had paid the money to Mr. Webb; that after he found the credit had been given by Mr. Jeanneret, and not Mr. Webb, his mode of accounting for the transaction was this: that he deposited the $4,500 to the credit of Mr. Laval, and kept the balance, namely, $48 42, for sheriff’s fees : for which, however, he never gave ere-dit; and although it did not exactly correspond with the amount of the fees, that it very nearly did so. With this statement, his counsel began his defence. Léwis Laval staid in the office at the time the money was ¡received, and proved that Mr. Cromwell was then in the habit of taking receipts for the monies he paid to his father. It was then shown and conceded, that according to the mode in which Mr. Cromwell himself had calculated the sheriff’s fees, at the date of the receipt, the sum said to have been retained for them in this case, viz. $48 42, could not correspond with the amount of those fees. It was shewn from a comparison of Mr. Laval’s cash hook and bank book, that he had frequently deposited large sums, ■for which there is no entry in the cash book. Mr. Cochran also proved that Mr. Laval had at several times made him friendly loans of large sums, without taking any written acknowledgments ; and Mr. Laval’s official receipt book was produced, wherein it appeared that he, in his own hand, had written a receipt on the ,14th of September, 1807, for money paid to Mr. Logan.
Upon this evidence, one of Mr. Cromwell’s counsel contended, that Mr. Cromwell must have paid the money to Mr. Lavalas it had been in proof that Mr. Laval had been in the office that day, and that he, Laval, had deposited it. The other counsel, that he had either deposited it in the'bank, and Mr. Laval had afterwards obtained credit for it in his book, or he had paid to Mr. Laval, and that Laval had deposited it. The jury found a verdict for the defendant. A motion is made for a new trial, on the following grounds :
1. That the verdict was contrary to law, because the plaintiff fully proved the receipt of the $4,548 42 cents, by Oliver Cromwell, which made him accountable for the same under his bond, and *468 he offered no evidence which was in law sufficient to discharge
2. That it is contrary to evidence, because the plaintiff shewed slrong concurring circumstances, that the defendant had not accounted for this.money in any of the ways he alleged he had done.
3; That it is without evidence, because he offered no proof to shew that he had accounted for it in any way ; but rested on surmises and conjectures that he must have accounted for it in some way, because of the sum of $4,500 being in the bank to the credit of the plaintiff on the 14th of September, 1807.
This is a case involved in much obscurity, the evidence being by no means satisfactory or conclusive on either side. It appears to be a proper case for the determination of a jury, and if there were even a doubt whether they had done justice, I should not be inclined to disturb the verdict. But I cannot but think the verdict correct, for if the money deposited by the plaintiff in bank was not that which the defendant had received, it certainly might have been shewn by him, by proving from whom he received the sum deposited ; or, if'received in small sums, from whom each sum was received, which made the aggregate amount. I am against the motion.
Nott, J.
The verdict in this cese was to be drawn from a variety of facts and presumptions, peculiarly proper for’the consideration of a jury. They have found a verdict for the defendant, and although I am inclined to think, I should have found a verdict for the plaintiff, I cannot say that there was such a preponderance of evidence in hss favor, as will authorise the court to set aside that verdict. The great advantage of examining witnesses in open court, is that the court and jury may draw inferences from their countenances and manner of giving evidence, as well as from the facts which they relate. All that advantage is lost in this court, where we are to form opinions of the facts alone, and those but partially related. It is not extraordinary, therefore, that we should see a case in a different point of view from what it appeared to the jury. But the presumption is, that the jury have taken the most correct view of it. In this case, it appears that the testimony was so nicely balanced, that the presiding judge gave no opinion on it; and in his report to this court, has- not said that he was dissatisfied with the verdict; or, that he was of opinion the weight of evidence was on the other side. I am of opinion, therefore, that the motion for a new trial ought to be refused.
Smith, J.
I am in favor of a new trial; and assign for reason, *469 that the plaintiff’s case was completely made out: and not a tittle of evidence on the part of the defendant, to shew he had ever accounted for the money. The alleging that he paid it into the bank, I think, is entirely unsupported. .
Geimkb, J.
This was one of those cases wherein there was a great deal of evidence on both sides ; and so nicely did itappear to be balanced, when it was heard before the court, that the judges were equally divided as to the preponderance of the testimony. I confess, I did think that the weight of evidence was with the plaintiff".